**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**EDILBERTO CANO-RODRIGUEZ,**

      **Plaintiff,**

**v.**

**ADAMS SCHOOL DISTRICT NO. 14, a political and quasi-municipal subdivision,**
**JAVIER ABREGO in his individual capacity,**
**ARCELIA BURGOS in her individual capacity,**

      **Defendants.**

_____

**COMPLAINT AND JURY DEMAND**
_____

      Plaintiff, Edilberto Cano-Rodriguez through his counsel, the law firm of Benezra & Culver, P.C., for his Complaint and Jury Demand, alleges the following:

**I.  INTRODUCTION**

      1.    Plaintiff Edilberto Cano-Rodriguez is a former Director of Teaching and Learning for English Language Development for Adams School District No. 14 (hereinafter referred to as "the School District"). He was terminated after almost three successful years spent improving the educational opportunities for English language learners (hereinafter "ELL") in the School District. Dr. Cano-Rodriguez, a Hispanic immigrant, aligned himself with Hispanic students and staff, to try to overcome the discriminatory practices instituted by the School District. Defendants responded by discriminating against him based on his race, national origin and his association with

Hispanic individuals. When Dr. Cano-Rodriguez complained about this discrimination, he was terminated.

## II.   JURISDICTION AND VENUE

2.      Jurisdiction is proper in this judicial district because Plaintiff Cano-Rodriguez is alleging violations of his rights under Title VI and Title VII of the Civil Rights Act, as amended, 42 U.S.C.§ 2000, *et seq.*, the First Amendment and the Equal Protection Clause of the Fourteenth Amendment through 42 U.S.C. § 1983, and 42 U.S.C. § 1981.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to Dr. Cano-Rodriguez's claims occurred within the jurisdiction of the United States District Court for the District of Colorado.

4.      Plaintiff has complied with all the administrative, jurisdictional and legal prerequisites for the filing of this action.  Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and national origin discrimination and unlawful retaliation, and by filing a Colorado Governmental Immunity Notice.  Plaintiff has received his Notice of Right to Sue from the EEOC.

## III.   PARTIES

5.      Plaintiff Cano-Rodriguez is a resident of the state of Colorado.

6.      Defendant Adams School District No. 14 is a political and quasi-municipal subdivision and may be sued under Colorado law.

7.     Defendant Javier Abrego is the Superintendent at Adams School District No. 14 and a resident of the State of Colorado.  The week of May 6, 2019 was Mr. Abrego's last week of work as Superintendent.

8.     Defendant Arcelia Burgos is the Chief Academic Officer of the Adams School District No. 14 and a resident of the State of Colorado.

## IV.  GENERAL ALLEGATIONS

A.     **Dr. Cano-Rodriguez Is a Well-Qualified and Successful Administrator Who Specializes in English Language Development and Biliteracy.**

9.     Dr. Cano-Rodriguez, is a Hispanic man. He was born in Mexico, and immigrated to the United States as an adult.

10.    Dr. Cano-Rodriguez has a PhD from University of Colorado, Boulder in Educational Equity and Cultural Diversity with a focus on biliteracy development.

11.    As a doctoral student and member of the Literacy Squared Research Team, Dr. Cano-Rodriguez conducted 6 years of research on the Literacy Squared framework while implementing this framework in schools in Oregon, Texas, Washington, Arizona and Colorado.

12.    Dr. Cano-Rodriguez's efforts, and the framework, were very successful. For example, his work implementing the framework at Godsman Elementary in Denver, led to the state recognizing the school as high performing. The research Dr. Cano-Rodriguez and his coworkers conducted on the efficacy of the framework showed that the English Language Learner ("ELL") students in the biliteracy programs, did as well, or better than, non-ELL students overall. Further, the biliteracy students had the benefit of being biliterate without Spanish language loss.

**B.**     **According to the Department of Education, the School District has Repeatedly Engaged in Systemic Race and National Origin Discrimination.**

13.     The School District has eleven schools to serve approximately 7,000 students kindergarten through 12th Grade.  The District is comprised of seven elementary schools, two middle schools and two high schools. The District is greater than 80 percent Hispanic, with at least 59.27 percent of the student population being Spanish speaking and 39.55 percent English speaking.  Every school except for Lester Arnold Alternative High School has a majority of students that are Spanish speaking.  At least 53 percent of the District's students, kindergarten through fifth grade are ELL.  At the secondary level, there are at least 40 to 43 percent ELL.

14.     On August 7, 2009, a complaint was filed with the United States Department of Education, Office for Civil Rights (hereinafter "OCR"), in case number 08-09-1230.  The Complainant alleged that the School District discriminated against national origin minority students on the basis of their limited English proficiency ("LEP") by not providing services necessary to participate meaningfully in the School District's educational program.  More specifically, the Complaint alleged that the District did not provide alternative language program ("ALP") services to all LEP students, and the District did not ensure that all teachers who are providing ALP services are qualified.   A resolution or settlement agreement was signed between OCR and the School District on February 5, 2010.

15.     In March 2010, OCR received a related complaint against the School District in Case No. 08-10-1112, alleging that the School District was a hostile work environment towards Hispanics and that the School District failed to communicate with national origin language minority parents in a language and manner that parents

understand.  OCR made violation findings in case number 08-10-112. Specifically, OCR found that the District failed to communicate effectively with parents who are limited in their English proficiency and that the District was responsible for the creation of a hostile work environment towards Hispanic students, parents, and staff.

16.     On February 11, 2014, the District signed a second settlement agreement. Pursuant to the second agreement, the District agreed to add additional requirements to the monitoring of 08-09-1230 concerning the School District's "ELL Design Committee", the School District's language use policy and communication with LEP parents in that they are closely aligned with ALP decision and monitoring.  The School District was required to design a plan to come into compliance with the agreements and federal law.

17.     A new Superintendent, Patrick Sanchez, was hired after the OCR settlement.   Superintendent Sanchez was committed to ending discrimination and retaliation in the School District and in bringing the School District into compliance with the provisions of the OCR settlement agreements.

18.     In the years since entering into the settlement agreements, the School District has continued its pattern and practice of race and national origin discrimination against Hispanics. The School District has failed to comply with the settlement agreements. The School District uses tactics of hyper-scrutiny and retaliation to attack faculty who complaint that the School District is out of compliance with the settlement agreements, insist that the School District comply with those agreements or who otherwise fight to end discrimination. As part of this pattern, the School District discriminated and retaliated against former Superintendent Patrick Sanchez based on his race and efforts to end discrimination in the School District.  Mr. Sanchez was ultimately

forced out of his position with the School District.  Because of their efforts to end discrimination in the School District, the School District also fired Walter Kramarz, former District Counsel; Marisol Enriquez, a former human resources director for the School District; Dr. Robyn Mondragon, the former Chief Academic and Equity Officer, and pushed out Ari Gerzon, Monaco Elementary Principal. For the same reasons, the School District also targeted, bullied and harassed Sherry Segura.

     **C.**    **Dr. Cano-Rodriguez's Success at the School District.**

19.    On July 27, 2015, Dr. Cano-Rodriguez began at Adams 14 as the Director of Teaching and Learning for English Language Development.

20.    Patrick Sanchez hired Dr. Cano-Rodriguez to design and implement alternative language programs, including biliteracy programs, to meet the requirements of the settlement agreements with OCR. He was also responsible for supporting the professional development of teachers working with ELL students.

21.    Dr. Cano-Rodriguez designed a program for all K-12 ELL students, and his plan was submitted to the OCR, as required by the settlement agreement, on September 30, 2015.  The 2015 ELD Plan included a biliteracy program and an English Language Development ("ELD") plan for grade levels K–12.

22.    Dr. Cano-Rodriguez designed an evidence-based plan utilizing the Literacy Squared Framework, teaching biliteracy that was linguistically and culturally responsive to students' needs. As Director of Teaching and Learning for English Language Development and Biliteracy, Dr. Cano-Rodriguez's key job duties included Pre - K-12 biliteracy programming, which he was hired to design, implement, and evaluate. In addition, he was referred to as the Director of English Language Development ("ELD") &

Biliteracy. In this role, he was a vocal advocate for ELL students and their families and Spanish teachers.

23.     The District represented that it would adhere to the Cano-Rodriguez plan while working with OCR on a final plan

24.     Dr. Cano-Rodriguez created eight biliteracy classrooms in his first year, and grew the program each year. By the 2017 school year, he had created 36 biliteracy classrooms.

25.     Dr. Cano-Rodriguez also expanded the Seal of Biliteracy Program for high school students which was initiated by his predecessor and awarded 36 graduating students with the Seal in 2016, and 46 students in 2017.

26.     Dr. Cano-Rodriguez was visible in state wide efforts to support the Seal including testifying in front of the Seal State Board, and worked actively with School District teachers and other faculty to grow the Seal program.

27.     Dr. Cano-Rodriguez worked with middle school and high school faculty to assess student Spanish language skills, and fund a Spanish middle school teacher, Advanced Placement Spanish teacher and curricular resources.

28.     In August 2016, based on Dr. Cano-Rodriguez's recommendation, the School District hired English Language Development and Biliteracy coaches to support ELL students.

29.     Dr. Cano-Rodriguez's efforts were successful. Based on preliminary findings, students attending biliteracy classrooms are performing comparably to their peers in English only classrooms, with the added advantage of maintaining biliteracy.

**D.   Defendants Dr. Abrego and Ms. Burgos Discriminated Against Dr. Cano-Rodriguez and Hispanic Students.**

30.    Dr. Abrego, an American born man, became the superintendent of the School District in the summer of 2016, and Arcelia Burgos, an American born woman, became the Chief Academic Officer in October 2016. Immediately, it was clear they were both hostile to Hispanic students and faculty.

31.    Early in the Fall 2016, Defendant Abrego derogatorily referred to the ELL School District students as **"handicapped."**

32.    Defendants Abrego and Burgos hampered Dr. Cano-Rodriguez's ability to train and utilize teachers and coaches. Biliteracy coaches were used in various capacities unrelated to their principal job responsibilities including for monitoring lunch and recesses, instead of provide support to biliteracy classrooms and ELL students.

33.    Moreover, Dr. Cano-Rodriguez's department, tasked with supporting 3,500 ELL and Former Language Learners students and overcoming years of discrimination against Hispanic students, had only three employees and was severely understaffed.

34.    In addition, at the beginning of the school year, Defendant Abrego reduced the number of work days for the ELD & Biliteracy Coordinator position, from 260 days, to 228.

35.    In 2016 and 2017, although the requirements of the OCR settlement agreements were still in place, and the need for Spanish support for ELL students was still tremendous, Defendants School District, Abrego and Burgos, attacked Dr. Cano-Rodriguez's efforts. At the time Dr. Cano-Rodriguez was still working to overcome severe deficits in the instruction provided to ELL students. For example, over 30% of secondary

students were identified as ELL in the School District, and over half of elementary school students were ELL. Despite this, only 20% of elementary school students were in biliteracy classes, there were no biliteracy classes offered after the third grade, only 20% of secondary school ELL students were enrolled in Spanish classes at all, and just a few dozen students were graduating with the Seal of Biliteracy each year.

36.    In April and May 2017, Defendant Abrego removed Dr. Cano's job duties when he instructed him that he would no longer be responsible for organizing the ELL program or bilingual curriculum or help develop and train Spanish teachers.

37.    In August 2017, Defendant Burgos also began to hyper scrutinize Dr. Cano-Rodriguez's performance and instructed him that he had to tell Defendant Abrego and Defendant Burgos where he was at all times. Defendant Burgos also began to regularly refuse meetings with him.   Other similarly situated directors and managers were not subjected to this type of hyper scrutiny.

38.    In September 2017, Defendants Abrego and Burgos continued to remove Dr. Cano-Rodriguez's job duties. Defendant Burgos instructed Dr. Cano-Rodriguez not to send a memo he drafted about biliteracy planning to the elementary schools and informed him that he could not speak to school principals about Biliteracy and ELD at an upcoming meeting.

39.    On September 13, 2017, Defendant Burgos refused to implement Dr. Cano-Rodriguez's recommendation that students have interventions pursuant to the Colorado Reading to Ensure Academic Development Act (the "Read" Act) in Spanish and said she would only provide them in English.

**E.   Dr. Cano-Rodriguez Complained that Defendants were Engaging in Discrimination.**

40.     On September 14, 2017, Dr. Cano-Rodriguez complained to Defendant Burgos that the District was engaging in national origin discrimination with its English only approach to the READ Act, and Defendant School District needed to comply with the OCR Settlement agreement and federal case law.

41.     Later in September 2017, Dr. Cano-Rodriguez's complained that in order to assist Hispanic students and families, and pursuant to the terms of the OCR settlement, the School District needed to send math homework and parent communications home in Spanish. Defendant Burgos refused.

**F.   Defendants Retaliated against Dr. Cano-Rodriguez for Complaining about Discrimination.**

42.     On September 25, 2017, Dr. Cano-Rodriguez requested to schedule regular meetings with elementary school principals to ensure the success of the ELD and Biliteracy programs. Defendant Burgos refused to approve this request.

43.     On September 28, 2017, Defendant Burgos cancelled biliteracy assessments in the non-research biliteracy classrooms.

44.     On October 2, 2017, Dr. Abrego threateningly told Dr. Cano-Rodriguez that he was an at-will employee, and, after a year and a half of Dr. Abrego referring to him as a biliteracy director, suddenly claimed that his title did not include biliteracy. Dr. Abrego also said he did not "believe" in biliteracy. Dr. Abrego then questioned whether Dr. Cano-Rodriguez had the experience for his job. Dr. Cano-Rodriguez confirmed he had the

experience, and was baffled by the inquiries after several years of performing the job successfully.

45.     On October 5, 2017, Dr. Abrego gave Dr. Cano-Rodriguez a written reprimand for being ten minutes late to work one day, and for taking an hour off work to attend his son's parent-teacher conference.

46.     On October 23, 2017, Ms. Burgos rejected Dr. Cano-Rodriguez's recommendation that some students needed to be tested in Spanish for the Colorado Measure of Academic Success Assessment ("CMAS"), and instead, tested all third-grade students in English.

47.     On October 24, 2017, Dr. Abrego unprofessionally accused Dr. Cano-Rodriguez of being more concerned about cheap tickets than students, when he asked for time off.

48.     On October 26, 2017, despite Dr. Cano-Rodriguez's requests, Ms. Burgos refused to provide Spanish classes to transferring middle school students claiming that the School District did not have to provide Spanish language resources.

49.     On November 10, 2017, Defendant Abrego interrupted a meeting with Dr. Cano-Rodriguez and the biliteracy coaches. In an aggressive tone Defendant Abrego claimed that OCR had no influence over ELD programming and that the only goal ELD programming was for "students to learn English as soon as possible." He also confrontationally took pictures of the posters Dr. Cano-Rodriguez hung up at the meeting to support his discussions with the biliteracy coaches.

50.     After this meeting, Dr. Cano-Rodriguez attended a prescheduled meeting with Dr. Abrego and Ms. Burgos and Dr. Abrego showed the pictures he took, and accused Dr. Cano-Rodriguez of "pushing" a biliteracy "agenda."

51.     Also on November 10, 2017, Ms. Burgos changed the title of ELD and Biliteracy Coaches to "Instructional Coaches," and removed all of the coaches from Dr. Cano-Rodriguez's supervision.

52.     On November 14, 2017, Dr. Abrego instructed Dr. Cano-Rodriguez not to prepare a presentation for an upcoming Board of Education meeting.

53.     On November 15, 2017, Ms. Burgos told Dr. Cano-Rodriguez he could not speak to principals without her approval.

54.     On November 16, 2017, Dr. Abrego removed the Seal of Biliteracy from Dr. Cano-Rodriguez's department.

55.     On November 17, 2017, Aracelia Burgos cancelled all professional development sessions between Dr. Cano-Rodriguez' Department and ELD & Biliteracy coaches.

56.     On November 19, 2017, Dr. Cano-Rodriguez filed a complaint with Dr. Abrego alleging that the School District was discriminating against students based on their race and national origin in violation of Title VI and the Equal Opportunity Educational Act. Among other things, he complained that Hispanic students did not have access to the same educational opportunities as white American students because the School District was still failing to translate parent or board meetings, report cards, and other communications into Spanish, and that reading intervention and Math were only offered

in English. He also complained that he, and other staff, were being discriminated against based on his race and national origin in violation of Title VII.

57.     On November 21, 2017, Dr. Abrego refused to allow Dr. Cano-Rodriguez to present at a high school night.  The same day, Dr. Abrego met with Dr. Cano-Rodriguez and told him he was being excluded from all meetings with principals.

58.     On November 27, 2017, Ms. Burgos announced that she would not include biliteracy in the District Unified Improvement Plan. The next day, Dr. Abrego confirmed that the future of biliteracy in the School District was uncertain, and accused Dr. Cano-Rodriguez of spending too much time on biliteracy efforts.

59.     On November 28, 2017, community members spoke at a school board meeting about the importance of bilingual education.

60.     On November 30, 2017, Dr. Abrego falsely accused Dr. Cano-Rodriguez of feeding information to these speakers, and accused Dr. Cano-Rodriguez of withholding data from him about the efficacy of the bilingual model. Dr. Cano-Rodriguez explained that he had presented all the relevant data about his biliteracy model to Dr. Abrego and others at previous meetings and had not given any information to the speakers in advance of the November 28, 2017 meeting.

61.     On December 4, 2017, Dr. Cano-Rodriguez was placed on administrative leave because of "allegations" which "warranted further investigation." He was not provided any additional information into the nature or results of the investigation.

62.     On December 7, 2017, Dr. Cano-Rodriguez filed a complaint with OCR describing discrimination and retaliation by Defendants against himself, and against other employees and students. Subsequently, the Defendants learned about this complaint.

63.     In March 2018, the School District finally notified Dr. Cano-Rodriguez that an investigator would look into his November 19, 2017, complaint.

64.     In April 2018, an investigator claimed to have completed the investigation and not have found any discrimination based on Dr. Cano-Rodriguez's race, national origin or his association with Hispanic families.

65.     On April 30, 2018, Dr. Abrego "closed" Dr. Cano-Rodriguez's complaint, including his retaliation complaint, despite the fact that the investigator did not address Dr. Cano-Rodriguez's complaints of retaliation.

66.     On April 30, 2018, Dr. Abrego fired Dr. Cano-Rodriguez claiming he was terminated as part of a "restructuring." He stated that the termination was effective as of April 30, 2018 if Dr. Cano-Rodriguez did not sign a severance agreement, or as of June 30, 2018, if he signed. Dr. Cano-Rodriguez refused to sign.  In fact, Dr. Cano-Rodriguez's position was not eliminated and his job responsibilities have been reassigned to a white American born School District employee.

67.     On November 13, 2018, OCR wrote Defendants Abrego and School District (the "OCR letter") informing them that OCR's recent monitoring revealed that the School District was not implementing the interim Cano-Rodriguez ALP plan that it had submitted to OCR in 2015.  The OCR letter represented that Defendant Abrego had first repudiated the interim plan in February of 2018, then told OCR that it was implementing only "parts" of the plan and then later said that the District would implement the interim plan.  The OCR letter stated that "evidence from the District, the Colorado Department of Education website, and interviews with District administration, staff and community members

demonstrates that the District has not met the terms of the Resolution Agreement, its own interim alternative language program or… the requirements of federal law…"

68.     In the OCR letter, OCR stated that: "Surprisingly, in May of 2018, the District non-renewed its ELL Director [Dr. Cano-Rodriguez] and reportedly eliminated the position from the District.  During our recent inquiry, we obtained information demonstrating that the District is modifying its ALP, without the assistance of a qualified ELL Director and without the input or assistance from its identified external consultant as agreed to in conjunction with case number 08-10-1112."

69.     The OCR letter concluded by observed that the School District had failed to complete its Agreement with OCR in case no 08-09-1230 and had also failed to meet numerous provisions of the Resolution Agreement in 08-10-1112.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Discrimination and Retaliation in Violation of 42 U.S.C. § 1981
### (Against All Defendants)

70.     Plaintiff hereby incorporates all paragraphs in this Complaint as though fully alleged herein.

71.     Plaintiff is Hispanic, and is closely associated with Hispanic students and staff who are members of a protected class under Section 1981.

72.     Plaintiff has at all times been qualified to perform his job responsibilities and performed them at all times at least satisfactory.

73.     Based on his race, Defendants denied Plaintiff the protections against race discrimination provided by Section 1981 in the terms and conditions of his

employment by denying him the same benefits, privileges, and terms and conditions of his contractual employment relationship that his white counterparts.

74.     The acts of discrimination to which Plaintiff has been subjected include, but are not limited to, subjecting Plaintiff to a hostile work environment, removing his job duties, and terminating Plaintiff. Further, Plaintiff was subjected to these adverse employment actions based on his association with Hispanic students and families.

75.     The motivating factor for Defendants actions was his race, and the race of the Hispanic staff and students Plaintiff associated with.

76.     Defendants discriminated against Plaintiff, other Hispanic staff, and Hispanic students, based on their thus race denying them equal rights to make and enforce contracts, and denying them full and equal benefits of the laws.

77.     Plaintiff engaged in protected activity herein by opposing Defendants' race discrimination against himself, as well as Hispanic staff and students.

78.     Defendants retaliated against Plaintiff because of his protected activity. The intentional retaliatory employment practices to which Plaintiff was subjected include, but are not limited to, subjecting Plaintiff to a hostile work environment, removing Plaintiff's job duties and terminating him.

79.     Defendants knowingly and willfully engaged in the illegal employment practices and policies that have discriminated against Plaintiff.

80.     The Defendants' actions described herein were willful and wanton and taken in reckless disregard for Plaintiff's rights and feelings.

81.     Defendants Burgos and Abrego's conduct violated the clearly established rights of Plaintiffs of which reasonable persons in Defendants' positions should have known.

82.     The aforementioned conduct represented the official custom, policy, or practice of Defendant School District.

83.     As a result of Defendants' unlawful conduct herein Plaintiff suffered damages including lost wages and benefits, compensatory damages, including emotional distress, punitive damages and he has incurred attorney's fees and costs.

### SECOND CLAIM FOR RELIEF
**Discrimination and Retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.***
**(Against Defendant School District)**

84.     Plaintiff hereby incorporates all paragraphs of this Complaint as though fully alleged herein.

85.     At all times, the School District was a qualified "employer" under Title VII.

86.     Plaintiff who is Hispanic, is a member of a protected class under Title VII. Plaintiff associated with other Hispanic staff members of the School District, who are also in a protected class under Title VII.

87.     At all pertinent times, Plaintiff performed the functions of his job competently and was qualified for his position.

88.     Defendant knowingly and intentionally engaged in discrimination against Dr. Cano-Rodriguez based upon his race, and his association with other Hispanic staff members, on the basis of their race and national origin.

89.    Defendant knowingly and intentionally retaliated against Dr. Cano-Rodriguez for opposing race and national origin discrimination against himself, and other staff members, which is prohibited by Title VII.

90.    The intentional discriminatory and retaliatory employment policies and practices to which Plaintiff was subjected to include, but are not limited to, subjecting Plaintiff to a hostile work environment, removing his job duties, and terminating Plaintiff.

91.    Defendant's acts and conduct were committed with malice and reckless indifference to Plaintiff's federally protected rights.

92.    As a proximate result of Defendants' above stated violations, Dr. Cano-Rodriguez suffered a loss of wages, loss of job, loss of benefits, loss of pension, loss of promotions, emotional distress, punitive damages and he has incurred attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
### Discrimination and Retaliation in violation Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution
### Pursuant to 42 U.S. C. § 1983
### (Against all Defendants)

93.    Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

94.    Plaintiff is a member of protected classes based upon his race, color and national origin pursuant to the Fourteenth Amendment to the United States Constitution. Further, Plaintiff associated with Hispanic students and School District staff, some of whom are immigrants, who were members of protected classes.

95.     Defendants denied Plaintiff his constitutionally protected rights when they intentionally discriminated against him based on his race and national origin, and his association with other Hispanic staff and students, some of whom are immigrants.

96.     Defendants removed Plaintiff's job duties, subjected him to a hostile work environment that was pervasive, and terminated him. Plaintiff's race, and his association with other Hispanic immigrants, were a motivating factor in the Defendants' decisions.

97.     Defendants retaliated against Plaintiff for complaining that the Defendants discriminated against him, and Hispanic students and staff, based upon their race and national origin by subjecting Plaintiff to a hostile work environment, removing his job duties, and terminating him.

98.     Defendants were acting under color of state law when they denied Plaintiff his rights.

99.     Defendants' discrimination against Plaintiff was not necessary to achieve a compelling interest, and discrimination against him was not the least restrictive means of achieving that interest.

100.    The aforementioned conduct represents the official custom, policy, and practice of the Defendants.

101.    Defendants' conduct violated the clearly established rights of Plaintiff, of which reasonable persons in Defendants position should have known.

102.    Defendants' conduct was engaged in maliciously and with reckless or callous indifference to Dr. Cano-Rodriguez's protected rights or feelings.

**FOURTH CLAIM FOR RELIEF**
**Retaliation in Violation of Title VI of the Civil Rights Acts, 42 U.S.C. § 2000d et**
**seq.**
**(AGAINST DEFENDANT SCHOOL DISTRICT)**

103.    Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

104.    The School District is a recipient of federal financial assistance.

105.    Plaintiff engaged in protected activity by expressing his good faith belief that Defendant intentionally discriminated against Hispanic students, some of whom were immigrants and were treated differently based on their race, color or national origin.

106.    Because he engaged in protected activity, Defendants retaliated against Plaintiff by subjecting Plaintiff to a hostile work environment, removing his job duties, and terminating Plaintiff.

107.    Defendant School District was aware of the retaliatory acts of Defendants Burgos and Abrego, and was deliberately indifferent to the retaliation.

108.    Defendants Burgos and Abrego were policymakers for the School District.

109.    Defendant School District had a pattern and practice of engaging in retaliation against those who voiced protected complaints about discrimination.

110.    Plaintiff reported this retaliation to Defendants, and the School District failed to investigate and respond adequately to the retaliatory conduct.

111.    Dr. Cano-Rodriguez suffered a loss of wages, loss of job, loss of benefits, loss of pension, loss of promotions, emotional distress, punitive damages and he has incurred attorney's fees and costs.

## FIFTH CLAIM FOR RELIEF

### First Amendment Freedom of Speech and Association Pursuant to 42 U.S.C. Section 1983
### (AGAINST ALL DEFENDANTS)

107.    Plaintiff hereby incorporates Paragraphs 1 through 106 as though fully alleged herein.

108.    Plaintiff exercised his right to freedom of speech as afforded by the First Amendment to the United States Constitution by speaking out about matters of public concern when he opposed discrimination by Defendants against himself, other employees and students, based upon race and national origin.

109.    Plaintiff's speech was not made pursuant to her official job duties.

110.    Plaintiff associated with other employees, students, and the family of students who were Hispanic immigrants.

111.    Defendants' intentionally and willfully retaliated against Plaintiff for exercising his freedom of speech and association by subjecting Plaintiff to a hostile work environment, removing his job duties, and terminating Plaintiff.

112.    Defendants' retaliatory conduct was substantially motivated by Plaintiff's exercise of freedom of speech and association.

113.    Defendants' conduct represented the official custom, policy or practice of Defendants.

114.    Defendants' conduct violated the clearly established rights of Plaintiff which reasonable persons in Defendants position knew or should have known.

115.   As a result of Defendants' misconduct Plaintiff suffered damages, including lost wages, compensatory damages, punitive damages against the individually named Defendants and has occurred attorneys fees and costs.

WHEREFORE Plaintiff Cano-Rodriguez respectfully requests that this Court enter judgment in his favor and against the Defendants an award:

(a)     injunctive and declaratory relief;

(b)     damages in such an amount as shall be proven at trial for back-pay and damages including lost benefits, wages, promotions, tenure, seniority, lost promotions, and other employment opportunities;

(c)     an order for Defendant School District to reinstate Plaintiff, or in the alternative to pay front-pay and benefits, including lost benefits in an appropriate amount;

(d)     compensatory damages, including emotional distress as allowed by law;

(e)     punitive damages as allowed by law;

(f)     attorney's fees and costs as provided for by law;

(g)     pre- and post-judgment interest, costs, expert witness fees; and

(h)     such other relief as the Court deems just and proper.

**PLAINTIFF CANO-RODRIGUEZ REQUESTS A TRIAL BY JURY
ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 13th day of May, 2019.

**BENEZRA & CULVER, P.C.**

*/s/ Seth J. Benezra*
_____
Seth J. Benezra, Esq.
John A. Culver, Esq.
633 17th St., Suite 1450
Denver, CO  80202
Telephone: (303) 716-0254
FAX: (303) 716-0327
sjbenezra@bc-law.com
jaculver@bc-law.com
Attorney for Plaintiff